Dennis F. KAY and Charlotte J. Kay, Plaintiffs-Respondents,

v.

Glennon R. VATTEROTT, Jr. and Edward Vatterott, d/b/a G & E Vatterott Realty & Building Company, Defendants-Appellants.

No. 44893.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 23, 1983.

81

Charles E. Valier, St. Louis, for defendants-appellants.

Robert C. Jones, Steven W. Koslovsky, Clayton, for plaintiffs-respondents.

PUDLOWSKI, Presiding Judge.

In October, 1977, respondents Dennis and Charlotte Kay entered into a written contract with appellants Glennon R. Vatterott, Jr., and Edward C. Vatterott, doing business as G & E Vatterott Realty & Building Company. The contract provided that respondents would pay $61,649 for the conveyance of a lot in the Lemay Woods Subdivision and construction of a single-family residence on the lot. Construction was to be completed by February 28, 1978. Respondents deposited $1,100 in earnest money. Various delays ensued and disputes developed over the cost of certain "extra" items which were to be added to the base price of the house. The home was not complete on February 28, 1978.

On June 30, 1978, the parties met for the purpose of closing. Respondents refused to close because they contended that 1) the inclusion and cost of certain "extra" items in the contract price had never been negotiated, 2) certain agreed-upon items had never been completed, and 3) the survey of the lot had been improper. Closing was postponed and rescheduled for July 10, 1978. A subsequent resurvey established that the lot boundaries were correct, but disagreement over other items continued.

Respondents were required to vacate the residence in which they were living. They asked for permission to move into the new residence. The parties drew up an agreement which allowed the respondents to take possession of the residence prior to closing for the "limited purpose" of "living and storing furniture." Respondents moved into the residence in early July, 1978.

A third attempt to close was made in December, 1978. The parties were again unable to resolve their differences but did agree to have the house inspected by an independent third party. Mr. Burt Wenneker, a professional contractor, examined the building and made recommendations concerning work which still needed to be done. Both parties took exception to cer-

tain aspects of Mr. Wenneker's report and the work was never done.

On March 28, 1979, appellants served a "Notice of Termination of Tenancy" on respondents demanding that they quit possession of the premises within 30 days. Respondents did not comply and in June, 1979, appellants filed an unlawful detainer action in the Associate Circuit Court of St. Louis County. Respondents then filed this action in September, 1979, seeking specific performance of the contract and also prayed for damages suffered. Appellants counterclaimed alleging breach of the purchase contract by respondents.

In January, the associate circuit court entered judgment against respondents in the unlawful detainer action. The present action came to trial in the circuit court in March, 1980. In August 1980, after submission of the case but before any judgment was handed down, appellants fell into arrears on their construction loan and lost title to the property when the lender foreclosed.

The trial court entered its judgment in December, 1980. It awarded damages to respondents based on the market value of the property at the time of trial ($80,000) and the contract price. Appellants' counterclaim was denied. Appellants filed a motion for new trial which was granted in part; the case was reopened for the purpose of hearing further evidence concerning the cost of extra work which had been done on the residence. In September, 1981, the trial court entered its amended judgment which found the contract price, modified for extras and credit due, to be $65,012.66. It awarded respondents $16,087.34 in damages.

Appellants raise three points on this appeal. First, they contend that the trial court should have limited damages to the cost of completing the home. Second, they maintain that damages should not have been awarded because respondents came into court with "unclean hands." Appellants argue that respondents' failure to relinquish possession of the residence should have barred any recovery. Finally, appellants maintain that the trial court erred in denying their counterclaim.

Appellants argue that because the residence was substantially complete, respondents were entitled only to the difference between the contract price and the cost of completion, citing *Southwest Engineering Company v. Reorganized School District No. 9*, 434 S.W.2d 743 (Mo.App. 1968). This argument ignores the fact that this case involved a contract for construction of a home *on a particular parcel of land*. Every tract of land is recognized as having a unique value, *Silliman v. Chrisman*, 584 S.W.2d 441, 445 (Mo.App.1979), and specific performance is ordinarily an appropriate remedy for breach of a contract to sell land. *Id.* Respondents here sought specific performance in their petition. This equitable remedy, however, could not be granted because appellants lost title to the property during the course of the litigation. The trial court therefore had to look to the ordinary law of damages for an appropriate remedy.

The general principle of awarding damages where there has been a breach of contract is that the person damaged is, as far as possible to do so by a monetary award, to be placed in the position he would have been had the contract been performed. He is entitled to recover the value of the contract at the time of its breach or the value of the promised performance, or the value of the benefit contracted for. (Citations omitted). *Dunning v. Alfred H. Mayer Co.*, 483 S.W.2d 423, 427 (Mo.App.1972).

Here part of the "benefit contracted for" was a particular parcel of land. In calculating "the value of the promised performance," the trial court necessarily had to consider the value of the land which should have been conveyed, in addition to the value of the building. It would have been improper to award damages for the cost of completion alone, ignoring the damage which respondents suffered as a result of appellants' failure to convey the land. The trial judge acted properly by following the rule set forth in *Dunning v. Alfred H. May-*

er Co., 483 S.W.2d 423, and awarding judgment based on the market value of the property at the time of trial, less the contract price of the property and building adjusted for extras and unfinished work.

■ It follows that the doctrine of "unclean hands" is not relevant to this case. Respondents were afforded a *legal* remedy (damages), not an equitable one (specific performance). The "clean hands" doctrine does not operate to bar a claim for damages at law. D. Dobbs, Remedies, § 2.4 (1973). Furthermore, "it is only when the plaintiff's improper conduct is the source, or part of the source, of his equitable claim, that he is to be barred because of this conduct. 'What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts. * * ' " (footnote omitted). *Id.* at p. 46. We need not decide whether it was improper for respondents to continue occupying the premises after receiving appellant's notice to vacate. Improper or not, this action was in no way a "source" of respondents right to recover from appellants, and would not have prevented the trial court from awarding specific performance had that remedy been available.

■ Appellants final point alleges that the trial court erred in denying appellants' counterclaim for damages on account of respondents' failure to close. This argument is without merit. The trial court found as a matter of fact that *appellants* had failed to do work necessary to complete the contract so that closing could be scheduled. This finding was supported by substantial evidence, and the judgment must therefore be affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Affirmed.

SMITH and KELLY, JJ., concur.