**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff/Appellant,**

v.

**Fiona WILSON, Defendant/Respondent.**

No. ED 98885.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 23, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 2013.

Application for Transfer Denied Oct. 29, 2013.

Eric D. Martin, St. Louis, MO, for appellant.

Gregory P. White, St. Louis, MO, for respondent.

## OPINION

ANGELA T. QUIGLESS, Judge.

Fiona Wilson (Respondent) lost her home to Federal National Mortgage Association (Fannie Mae) in a foreclosure sale. When Respondent failed to vacate after the sale, Fannie Mae filed an action for unlawful detainer. The trial court entered judgment in favor of Respondent, finding that her right to possession of the property was superior to Fannie Mae's and that Fannie Mae had failed to comply with the notice requirements of Section 534.030.[1]

Fannie Mae argues three points on appeal. First, it claims it introduced uncontradicted evidence of its right to immediate possession of the property under the unlawful detainer statute. Second, it argues that a lease provision in the deed of trust did not grant Respondent a superior right of possession to the property. Finally, it alleges that the notice provided to Respondent was adequate and that she was not entitled to receive written demand following the foreclosure sale. We reverse and remand.

## I. BACKGROUND

On October 29, 2003, Respondent executed a promissory note in favor of Allegiant Bank for $55,000, secured by a Purchase Money First Deed of Trust (deed of trust), for the house and lot located at 14070 Invicta Drive, Florissant, MO 63043 (the property). Wells Fargo Bank, N.A. (Wells Fargo) became the holder of the promissory note sometime thereafter. Wells Fargo appointed Kozeny & McCubbin, L.C. (K & M) the successor trustee under the deed of trust.

---

1. All statutory references are to Mo.Rev.Stat. (2012), unless otherwise indicated.

On November 1, 2010, Respondent and Wells Fargo entered into a Loan Modification Agreement. With a few exceptions, the terms of the original agreement between Respondent and Allegiant Bank were still in effect. However, the interest rate changed from 5.75% to 2.5% for years one through five of the loan, with increases in years six through twenty-three. Respondent's monthly payment for years one through five was $261.71 in principal and interest plus $319.39 in escrow for a total of $581.10.

Respondent made her mortgage payment of $581.10 in December 2010. She attempted to make her January 2011 and February 2011 payments by phone, but Wells Fargo refused them. On March 29, 2011, Respondent made a payment of $785.13, which represented her monthly principal and interest for the months of January, February, and March. It is unclear why the escrow amount was not included in this payment. Wells Fargo initially accepted the March 29, 2011 payment. However, on May 26, 2011, Wells Fargo sent Respondent a check totaling $1,366.23 for "misapplication reversal." This total equaled the payments made by Respondent in December 2010 and March 2011.

On June 29, 2011, Wells Fargo foreclosed on the deed of trust and instructed K & M to conduct a trustee's sale of the property. Fannie Mae purchased the property at the sale for $59,694.20. A Successor Trustee's Deed under Foreclosure (successor trustee's deed) was executed on July 13, 2011 and recorded on July 14, 2011. On July 22, 2011, Fannie Mae, through its attorneys, sent two letters, identical except for the addressees' names, to the property. One letter was addressed to Respondent, and the other was addressed to "Current Occupant." There is no evidence that either letter was sent by certified or registered mail, and they were not served personally on Respondent or posted on the premises. The letters notified Respondent, in pertinent part, as follows:

The above referenced property was sold at foreclosure sale to Federal National Mortgage Association which has retained Kozeny and McCubbin, L.C. to file an eviction action.

We are attempting to collect a debt and any information obtained will be used for that purpose. Unless within 30 days after you receive this notice you dispute the validity of the debt or a portion thereof, the debt will be assumed to be valid. If you notify us in writing within 30 days after you receive this notice that you dispute the debt or a portion thereof, we will obtain and mail to you verification of the debt. Also, upon your written request within 30 days after you receive this notice, we will provide you with the name and address of the original creditor, if different than the current creditor.

The commencement of an eviction action does not affect the rights as set forth herein.[2]

For further information, please contact this office by calling (314) 991–0255 and asking for the eviction department. You may also email the eviction department at ev@km-law.com. In all communications please state your name and property address.

Respondent refused to leave the property after receiving notice of the foreclosure sale. Fannie Mae subsequently filed a Complaint in Unlawful Detainer in the Cir-

---

**2.** In the letter addressed to "Current Occupant," an additional paragraph followed this one, stating: "If you were a tenant of the former owner(s), please let us know immediately."

cuit Court of St. Louis County on July 25, 2011. Trial was held on June 18, 2012. In its July 18, 2012 Judgment and Order, the trial court found that Respondent did not default on the mortgage with Wells Fargo. The trial court also found that Respondent was "ready, willing and able to fulfill her obligations under the original Note, Security Instrument and Loan Modification Agreement, but Wells Fargo did not fulfill its contractual obligations and refused [Respondent's] payments." Accordingly, because Respondent was never in default and remained willing to fulfill her contractual obligations, the court found that she never lost her right to possession of the property. Because her right to possession predated Fannie Mae's title in the property, the trial court held that Respondent's right to possession of the property was superior to Fannie Mae's.

The trial court also determined that Fannie Mae had failed to provide Respondent with proper notice pursuant to Section 534.030.1. The court read that statute to require a written demand for possession after the foreclosure of a mortgage or deed of trust before a person is guilty of an unlawful detainer. The trial court concluded that Fannie Mae failed to send a written demand to Respondent in addition to the notice of foreclosure and therefore was not in compliance with the notice requirements of Section 534.030.1.

Finally, the trial court found that if Respondent was a tenant of the property under a lease provision in the deed of trust, Fannie Mae was also required to provide her notice pursuant to Sections 534.030.2 and 534.030.3. The court determined that Fannie Mae failed to provide Respondent with such notice and was therefore in violation of the statutes. This appeal followed the trial court's judgment.

## II. DISCUSSION

### A. Standard of Review

On review of this court-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable inferences and disregarding contrary evidence and inferences. *Stamatiou v. El Greco Studios, Inc.*, 898 S.W.2d 571, 573 (Mo.App. E.D. 1995). We defer to the trial court's factual findings because the trial court is in a superior position to assess credibility. *Mullenix–St. Charles Props. v. St. Charles*, 983 S.W.2d 550, 555 (Mo.App. E.D.1998). However, we review the trial court's conclusions of law *de novo*. *Id.*

### B. Right to Possession

In its first point on appeal, Fannie Mae alleges the trial court erred in entering judgment for Respondent because it introduced uncontradicted evidence of its right to immediate possession of the property under the unlawful detainer statute. Fannie Mae argues further that Respondent's testimony that she was not in default prior to the foreclosure sale is a statutorily prohibited challenge to the validity of the sale and the merits of its title. We agree.

Unlawful detainer is defined in Section 534.030.1. It provides:

When any person willfully and without force holds over any lands, tenements, or other possessions, after the termination of the time for which they were demised or let to the person, or the person under whom such person claims; or after a mortgage or deed of trust has been foreclosed and the person has re-

ceived written notice of a foreclosure; or when premises are occupied incident to the terms of employment and the employee holds over after the termination of such employment; or when any person wrongfully and without force, by disseisin, shall obtain and continue in possession of any lands, tenements or other possessions, and after demand made, in writing, for the delivery of such possession of the premises by the person having the legal right to such possession, or the person's agent or attorney, shall refuse or neglect to vacate such possession, such person is guilty of an "unlawful detainer."

An action for unlawful detainer is a limited statutory action where the sole issue to be decided is the immediate right of possession to a parcel of real property. *US Bank v. Watson*, 388 S.W.3d 233, 234–35 (Mo.App. E.D.2012) (citations omitted). It does not address questions of ownership or the validity of title. *Wells Fargo Bank v. Smith*, 392 S.W.3d 446, 456 (Mo. banc 2013). To prevail in an unlawful detainer action, a plaintiff must demonstrate (1) that the property was purchased at a foreclosure sale, (2) the defendant received notice of the foreclosure, and (3) the defendant refused to surrender possession of the property. *US Bank v. Watson*, 388 S.W.3d 233, 236 (Mo.App. E.D.2012); *JP Morgan Chase Bank v. Tate*, 279 S.W.3d 236, 239 (Mo.App. E.D.2009).

Fannie Mae has successfully proven each of these elements. It is undisputed that Fannie Mae purchased the property at a foreclosure sale. It is also uncontested that the successor trustee's deed stated that K & M gave written notice of the foreclosure by certified mail to Respondent, as required by Section 443.325.3, at least 20 days prior to the date of the foreclosure sale. Pursuant to Section 443.380, recitals in a trustee's deed after a foreclosure sale "shall be received as *pri-*

*ma facie* evidence in all courts of the truth thereof." Finally, Respondent admitted in her discovery responses that she had refused to surrender the property at issue. Fannie Mae thus met the "narrowly define[d] . . . proof required [of] a plaintiff in an unlawful detainer action." *US Bank v. Watson*, 388 S.W.3d 233, 236 (Mo.App. E.D.2012).

■ Respondent's argument that her right to possession of the property is superior to Fannie Mae's is without merit. Respondent claims that she was never in default of her loan and that, as a result, the sale to Fannie Mae was invalid. Respondent's default, however, cannot be considered in this action. Issues relating to title or matters of equity, such as mistake, estoppel, and waiver, cannot be interposed as a defense in an unlawful detainer action. *Wells Fargo Bank v. Smith*, 392 S.W.3d 446, 454 (Mo. banc 2013) (citations omitted). Section 534.210 explicitly states that "[t]he merits of the title shall in nowise be inquired into, on any complaint which shall be exhibited by virtue of the provisions of this chapter." Whether Respondent was in default of her mortgage is therefore not a relevant inquiry.

■ Homeowners who dispute a lender's right or ability to foreclose upon their property have two options. They may either "(1) sue to enjoin the foreclosure sale from occurring, or (2) if the sale has occurred and the buyer has sued for unlawful detainer, bring a separate action challenging the foreclosure purchaser's title and seek a stay of the unlawful detainer action in that separate case." *Id.* at 461. What a homeowner may not do is wait until after the foreclosure and then challenge the validity of the sale as a defense in a subsequent unlawful detainer action. *US Bank v. Watson*, 388 S.W.3d 233, 235 (Mo.App. E.D.2012) (citations omitted).

While this court empathizes with Respondent's situation, it is also bound by the clear mandate of the unlawful detainer statute. Even where a defendant has had their home wrongfully foreclosed by a lender, "a foreclosure purchaser is entitled to bring an unlawful detainer action using the deed as evidence of the fact of the sale unless and until that deed has been declared void in a proper action." *Wells Fargo v. Smith*, 392 S.W.3d 446, 461 (Mo. banc 2013). Unfortunately for Respondent, an unlawful detainer action is not the proper action in which to challenge the merits of title. Point granted.

## C. The Lease Provision

■ In its second point on appeal, Fannie Mae alleges that the trial court misinterpreted the deed of trust to contain a lease provision that grants a superior right of possession to Respondent as a tenant of the property. It argues further that it brought this action against Respondent as a borrower, not as a tenant, and that it met the appropriate burden of proof required. We agree.

Under the unlawful detainer statute, defendants can be divided into five classes: (1) holdover tenants; (2) holdover borrowers; (3) holdover tenants of foreclosed properties; (4) holdover employees; and (5) intruders. The trial court relied on Paragraph 25 of the deed of trust to classify Respondent as a "holdover tenant of a foreclosed property." Paragraph 25 states:

25. Lease of the Property. Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

The trial court found that Respondent was never in default and that her lease had not ended. As a result, Respondent was entitled to receive notice pursuant to Sections 534.030.2 [3] and 534.030.3 [4], in addition to the notice of foreclosure that Wells Fargo provided her. However, these sections are inapplicable to this case because Respondent is not a residential tenant.

Fannie Mae did not use Paragraph 25 of the deed of trust as the basis for its unlawful detainer action. It brought this action against Respondent as a "holdover borrower," not as a "holdover tenant of a foreclosed property." Foreclosure purchasers have always been able to bring unlawful detainer actions against former owners

---

3. "In any case where a foreclosed property is occupied prior to the foreclosure by a person who was a *residential tenant*, ... then after the foreclosure sale, the new owner of the property shall give the occupant notice, as described in subsection 3 of this section, that the sale has occurred, that they are the new owner, and if said owner seeks possession from the occupant that the occupant has not less than ten business days from the date of this notice to vacate the premises ..." (emphasis added).

4. "The notice required in subsection 2 of this section shall be sent by certified or registered mail if the name of the occupant is known to the new owner. If the name of the occupant is not known to the new owner then the notice shall be sent by regular mail and addressed to 'occupant' ... A notice shall also be posted on the door of the premises where the occupant resides ..."

whose deed of trust created a landlord-tenant relationship and who refused to vacate after the lease term ended. *Wells Fargo Bank v. Smith*, 392 S.W.3d 446, 462 n. 11 (Mo. banc 2013). In 1997, however, the unlawful detainer statute was amended to allow foreclosure purchasers to proceed against former owners, regardless of whether the former owner also qualified as a holdover tenant. *Id.*

To prevail in an action for unlawful detainer, a plaintiff need only provide evidence to satisfy the elements of one cause of action. Here, Fannie Mae met its burden of proof in a cause of action for unlawful detainer against a foreclosed borrower. It showed that (1) Respondent's deed of trust had been foreclosed; (2) Respondent received notice of the foreclosure pursuant to Section 443.325.3; and (3) Respondent refused to surrender possession of the property. Fannie Mae did not need to prove anything further.

We find no cases since the amendment of the unlawful detainer statute in 1997 that considers a foreclosed borrower to be a tenant of her own property. Although the trial court relied *on Edwards v. Hoxworth*, 258 S.W.2d 15 (Mo.App.1953), in its opinion, this case is inapposite to the present situation. In *Hoxworth*, the plaintiff purchased property where the defendant resided as a tenant under a lease. 258 S.W.2d 15, 15 (Mo.App.1953). Before the plaintiff's purchase, however, the seller had agreed to renew the tenant's lease for a period that ultimately extended beyond the date of purchase. *Id.* As a result, the property was bought subject to the lease and the court concluded that the defendant-tenant could not be evicted. *Id.*

The property in *Hoxworth* was purchased through a normal, non-distressed sale between two private individuals. By contrast, the property purchased by Fannie Mae was sold through a foreclosure sale. Moreover, *Hoxworth* was decided more than forty years before the amendment of the unlawful detainer statute to include the foreclosed borrower class. Under the current statutory landscape, the defendant in *Hoxworth* would be characterized as a "holdover tenant," while Respondent is a "holdover borrower." The plaintiff in *Hoxworth* accordingly had a different evidentiary burden than Fannie Mae under the unlawful detainer statute.

Even if we were to assume, *arguendo,* that the lease provision in the deed of trust was applicable to this case, Respondent's possession would have been terminated at the foreclosure sale. The lease provision itself states that "[b]orrower ... without notice or demand shall ... surrender peaceable possession of the Property to Trustee upon default *or to the purchaser of the Property at the foreclosure sale.*" There is no dispute that Fannie Mae purchased the property at a foreclosure sale. Respondent was therefore obligated to surrender possession of the property to Fannie Mae.

■ Finally, it is settled law that a lease is automatically extinguished by foreclosure unless it predates the lien of the foreclosed deed of trust. *City Bank and Trust Co. of Moberly v. Thomas,* 735 S.W.2d 121, 122 (Mo.App. E.D.1987). Here, the lease provision was included within the deed of trust and was executed at the same time the deed of trust was executed. Since any resulting leasehold could not have predated the deed of trust, Respondent's hypothetical lease could not have survived the foreclosure sale. Point granted.

### D. Notice

■ In its final point on appeal, Fannie Mae claims that K & M provided Respondent with adequate notice prior to ·the

foreclosure sale. Fannie Mae argues further that it was not statutorily required to send a written demand for possession of the property to Respondent. We agree.

The notice required for impending foreclosure is governed by Section 443.325.3:

> In the event of foreclosure under a power of sale, the foreclosing mortgagee or trustee shall, not less than twenty days prior to the scheduled date of the sale, cause to be deposited in the United States mail an envelope certified or registered, and with postage prepaid, enclosing a notice containing the information required in the published notice of sale referred to in Section 443.320, addressed
>
> (1) To each person whose name and address is set forth in any such request recorded at least forty days prior to the scheduled date of sale; and
>
> (2) To the person shown by the records in the office of the recorder of deeds to be the owner of the property as of forty days prior to the scheduled date of foreclosure sale at the foreclosing mortgagee's last known address for said record owner; and
>
> (3) To the mortgagor or grantor named in the deed of trust or mortgage at the foreclosing mortgagee's last known address for said mortgagor or grantor . . .

Fannie Mae provided the trial court the successor trustee's deed that it received at the foreclosure sale. The successor trustee's deed stated that the trustee gave notice of the foreclosure to Respondent in satisfaction of Section 443.325.3. This recital serves as *prima facie* evidence that the Respondent received notice of the foreclosure. Section 443.380; *Wells Fargo Bank v. Smith*, 392 S.W.3d 446, 462 (Mo. banc 2013) (citations omitted).

The notice required for an impending foreclosure satisfies any notice required to establish unlawful detainer against a foreclosed borrower. Yet Respondent believes that she was entitled to receive written demand for the property, in addition to written notice of the foreclosure. Since the nineteenth century, Missouri courts interpreting the unlawful detainer statute have unequivocally determined that the written demand requirement should apply only to the intruder class. *See Anderson v. McClure*, 57 Mo.App. 93, 1894 WL 2186, at *2 (1894); *Ray v. Blackman*, 120 Mo. App. 497, 97 S.W. 212, 216 (1906); *Bess v. Griffin*, 234 S.W.2d 978, 982 (Mo.Ct.App. 1950); *South Side Nat'l Bank v. Schneider*, 603 S.W.2d 25, 26 (Mo.App. E.D.1980); *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 256, 260 (Mo.App. S.D. 1996). The Missouri legislature has amended the unlawful detainer statute twice in the last fifteen years, in 1997 and 2009. Each time, the legislature has inserted a new class of defendant into the text, with minimal structural changes. No alteration has occurred in the language providing that written demand should be given to intruders only.

Finally, of the five enumerated classes in the unlawful detainer statute, only intruders lack constructive or actual notice of their wrongful possession. A holdover tenant has a lease agreement that places a firm deadline on his tenancy. *See Ray v. Blackman*, 120 Mo.App. 497, 97 S.W. 212, 216 (1906). A borrower must have received written notice of the foreclosure pursuant to Section 443.325.3. A tenant of a foreclosed property must be given notice under Section 534.030.2–.3. And finally, an employee has his employment agreement to mark off the end of his possession. Logic dictates then that written demand must only be provided to intruders because they are the only class of defendant that could potentially be caught unaware by a lawsuit. Because Respondent was a holdover borrower, and not an intruder,

she was not entitled to receive written demand for the property. Point granted.

### III. CONCLUSION

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

ROBERT G. DOWD, JR., P.J. and ROY L. RICHTER, J., Concur.